IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHELSEA JANINE JOHNSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00118-O |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

## I.     STATEMENT OF THE CASE

Plaintiff Chelsea Janine Johnson ("Johnson") filed this action pursuant to Sections 405(g)

and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act ("SSA"). Johnson protectively filed her applications in April 2019,

alleging that her disability began on August 31, 2017. (Transcript ("Tr.") 10; *see* Tr. 177–97.)

After her applications were denied initially and on reconsideration, Johnson requested a hearing

before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 54-129.) The ALJ held a hearing on

August 7, 2020 and issued a decision on August 19, 2020 denying Johnson's applications for

1

benefits. (Tr. 10-20, 33-53.) On December 8, 2020, the Appeals Council denied Johnson's request for review, leaving the ALJ's August 19, 2020, decision as the final decision of the Commissioner in Johnson's case. (Tr. 1–6.) Johnson subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third,

disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1]  Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences.  *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*  If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam).  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations.  20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e).  The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).  At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at \*5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.    ISSUES

In her brief, Johnson presents the following issues:

1. Whether the ALJ erred by failing to consider whether Johnson's severe impairment of non-epileptiform seizure disorder met or equaled section 12.07 of the Listing 12.07; and

2. Whether the ALJ erred in failing to consider the effects of Johnson's psychogenic nonepileptic seizures on her ability to perform work-related activities.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, 8-12.)

### IV.    ALJ DECISION

In her August 19, 2020, decision, the ALJ found at Step One that Johnson had not engaged in substantial gainful activity since August 31, 2017, the alleged onset date of disability, and that Johnson continued to meet the insured status requirements of the SSA through March 31, 2020. (Tr. 12.) At Step Two, the ALJ concluded that Johnson had the following severe impairments: "a non-epileptiform seizure disorder; asthma; obesity; a depressive disorder; post-traumatic stress disorder ("PTSD"); an anxiety disorder; and, a bi-polar disorder." (Tr. 12.) At Step Three, the ALJ found that Johnson did not suffer from an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 13-15.)

4

At Step Four, as to Johnson's RFC, the ALJ stated:

[C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can never climb ladders, ropes, or scaffolds; she should avoid even moderate exposure to pulmonary irritants and avoid all exposure to workplace hazards such as moving machinery and unprotected heights; she can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; she can deal with problems involving a few concrete variables in or from standardized situations; she cannot perform production rate pace work; and, she can occasionally interact with the general public.

(Tr. 15; *see* Tr. 18-19.) Based upon this RFC assessment and the testimony of a vocational expert

("VE"), the ALJ concluded that there were jobs that exist in significant numbers in the national

economy that Johnson can perform. (Tr. 19-20.)[2]  Consequently, the ALJ found that Johnson was

not disabled. (Tr. 20.)

## V.   DISCUSSION

### A.   Sections 11.02 and 12.07 of the Listing

In her brief, Johnson argues that the ALJ failed to consider whether Johnson's severe

impairment of non-epileptiform seizure disorder met or equaled section 12.07 of the Listing, which

pertains to somatic symptoms and related disorders, and incorrectly determined that Johnson did

not meet section 11.02 of the Listing. (Pl.'s Br. at 8-10.) Specifically, Johnson argues:

The ALJ found that the Plaintiff has a severe impairment of non-epileptiform seizure disorder, which she later also identified as psychogenic seizures. These were formerly known as "pseudoseizures."

. . . .

The Acting Commissioner's regulations specifically indicate that pseudoseizures are not to be evaluated using the criteria of Section 11.00 of 20 CFR., Part 404, Appendix 1, pertaining to neurological disorders. Rather, they are to be evaluated under the criteria for mental disorders, found in Section 12.00 of Appendix 1. . . .

---

[2] The VE testified and the ALJ found that Johnson would be able to perform the jobs of: (1) Laundry Folder (Dictionary of Occupational Titles ("DOT") No. 369.687-018); (2) Mail Sorter (DOT No. 209.687-026); and (3) Lens Inserter (DOT No. 713.687-026). (Tr. 20, 51.)

. . . .

Accordingly, the Acting Commissioner has clearly set forth that pseudoseizures, or psychogenic nonepileptic seizures, are to be evaluated using the criteria of Section 12.07 of Appendix 1, pertaining to somatic symptom disorders. However, the ALJ never referred to Section 12.07 of Appendix 1, nor did the ALJ consider whether the Plaintiff's psychogenic seizures met or equal in severity the requirements set forth therein . . . .

The ALJ did consider, however, whether the Plaintiff satisfied the requirements of Sections 11.02 and 11.03 of Appendix 1, dealing with epilepsy. But since the ALJ had already determined that Ms. Johnson did not have epileptic seizures, the reference to Section 11.02 is, in effect, a smokescreen, as the Plaintiff could never satisfy such requirements because the ALJ had already determined that she did not have a neurological disorder of epilepsy. Further, the ALJ stated that the Plaintiff does not have seizures occurring either monthly (for convulsive epilepsy) or weekly (for non-convulsive epilepsy[)], but the ALJ provides no basis for either of these conclusions.

Plaintiff's counsel at the administrative level prepared a summary of recorded episodes, which was submitted to the Appeals Council. Such summary establishes that the Plaintiff was observed to have convulsive episodes at least once per month for at least three consecutive months, despite treatment, as required by Section 11.02 of Appendix 1. Thus, had the ALJ evaluated the Plaintiff's seizures as epileptic seizures, the evidence shows that Plaintiff would have met the requirements for presumptive disability.

(Pl.'s Br. at 8-10) (internal citations omitted).)

In her response, the Commissioner states:

Plaintiff criticizes the ALJ's step three finding. Specifically, Plaintiff claims that the ALJ should have analyzed Plaintiff's non-epileptiform seizure disorder, also identified as psychogenic seizures, under Listing 12.07, rather than Listing 11.02. However, as discussed below, the requirements of Listing 12.07 are not met in the instant case. Accordingly, *assuming arguendo* that Plaintiff's assertion regarding the applicability of Listing 12.07 is correct, any such error resulting from not explicitly considering Listing 12.07 would be harmless at most. An ALJ need not consider a particular listing if the requirements of such listing are not met.

Plaintiff also argues that, had the ALJ evaluated Plaintiff's seizures as epileptic seizures, the evidence of record shows that Plaintiff would meet the requirements of Listing 11.02(A). . . . The Commissioner notes that Listing

6

11.02(A) requires generalized tonic-clonic seizures at least once a month for at least three consecutive months, <u>despite adherence to prescribed treatment</u>. A review of the evidence of record shows that Plaintiff did not meet such requirement, as Plaintiff was often non-compliant with medication. It is the claimant's burden to prove that her condition meets the requirements of a listed impairment. Plaintiff fails to meet her burden.

(Defendant's Brief at 3-4 (internal citations omitted).)

To obtain a disability determination at Step Three, a claimant must show that her impairments meet or equal one of the impairments in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. § 404.1526(c).[3] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant

---

[3] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

7

to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, Johnson's first argument is that the ALJ erred by failing to consider whether Johnson's impairments met or equaled Listing 12.07. (*See* Pl.'s Br. at 8-10.) As relevant here, section 12.07 of the Listing, which deals with somatic symptoms and related disorders, states:

A. Medical documentation of one or more of the following:

   1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;

8

2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or

3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.07 (internal citations omitted).

While the ALJ did not specifically analyze whether Johnson met section 12.07 of the Listing, the ALJ did discuss whether Johnson's mental impairments met sections 12.04, 12.06, and 12.15 of the Listing. (Tr. 13-15.) In deciding that Johnson did not meet these sections, the ALJ set forth her analysis under "Paragraph B," finding that Johnson had (1) a moderate limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. (Tr. 13-14.)

As set forth above, Johnson the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Zebley*, 493 U.S. at 531, *superseded by statute on other grounds as stated in McCloskey*, 2016 WL 5745077 at \*7.[4] Johnson has failed to meet this burden

---

[4] *See also Hodges v. Colvin*, No. 4:15-CV-506-BL, 2016 WL 5957608, at \*3 (N.D. Tex. Oct. 12, 2016) ("Hodges argues she met the criteria set out for an impairment listed at § 12.07 in appendix 1 of the Social Security regulations and the ALJ therefore erred by failing to discuss that listing in the context of her impairments . . . As noted above, a claimant bears the burden of proof at step three, and the ALJ's decision must be affirmed if supported by anything more significant than a scintilla of evidence.")

as she has not provided evidence that the ALJ erred in her Paragraph B analysis in finding that Johnson had anything more than a moderate limitation in each of the four areas of mental functioning. Consequently, Johnson has failed to show that she had an extreme limitation of one, or marked limitation of two, of the four areas of mental functioning, which is required in order to meet section 12.07 of the Listing. Thus, any error by the ALJ in failing to discuss section 12.07 would be harmless and remand is not required. *See Mcgowan v. Saul*, No. 4:20-CV-282, 2021 WL 799325, at *4 (S.D. Tex. Jan. 6, 2021) ("Because there is no indication the failure [of ALJ to specifically reference both listings in relation to paragraphs B and C] affected [Plaintiff's] substantial rights, any error was harmless"); *Saleeba v. Berryhill*, No. 17-CV-3538, 2019 WL 1386817, at *5 (S.D. Tex. Mar. 5, 2019) (finding ALJ's failure to mention Listing 12.02 harmless because the paragraph B and C criteria for Listings 12.03 and 12.04—which the ALJ did discuss— apply equally to Listing 12.02).

As to Johnson's argument that the ALJ erred in properly evaluating Johnson's seizures under Section 11.02, Johnson claims that the summary of recorded seizure episodes submitted to the Appeals Council establishes that "Plaintiff was observed to have convulsive episodes at least once per month for at least three consecutive months, despite treatment, as required by section 11.02." (Pl's Br. at 10; *see* Tr. 351-52.) Section 11.02 of the Listing, which relates to epilepsy, can be met in several ways, including the following: (1) having generalized tonic-clonic seizures that occur at least once a month for at least 3 consecutive months despite adherence to prescribed treatment or (2) dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02.

The summary of recorded seizure episodes submitted to the Appeals Council references the various places in the record that document when Johnson had seizures from the June 26, 2017

through April 17, 2020. (Tr. 351-52.) However, the evidence does not indicate the specific type

of seizures Johnson was having nor whether the requisite number of seizures required always

occurred despite adherence to prescribed treatment, as required to meet the relevant parts of section

11.02 of the Listing. In fact, the ALJ noted several times in her decision that either Johnson had

trouble affording medications due to a lack of insurance or that she had ran out of and gone without

medications for extended periods of time. (Tr. 16-17.) Finally, and most importantly, Johnson

does not claim to suffer from epilepsy and the regulations specifically state that "psychogenic

nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02." 20

C.F.R. Part 404, Subpt. P, App. 1, § 11.00H.1. Because Johnson has failed to meet her burden to

demonstrate that she met the specified medical criteria set forth in section 11.02 of the Listing, the

ALJ did not err and remand is not required.

### B. Psychogenic Nonepileptic Seizures and the Special Technique and RFC Determination

In her brief, Johnson also argues that the ALJ's RFC determination was erroneous because

the ALJ failed to consider the effects of Johnson's psychogenic nonepileptic seizures upon her

ability to work. (Pl.'s Br. at 10-12; *see* Plaintiff's Reply to Brief of Defendant ("Pl.'s Reply") at

2-4.) Johnson claims that the ALJ erred while doing the special technique by failing to make any

"reference to, or accommodation for, the non-epileptic seizure disorder; a disorder which the ALJ

characterized as 'severe.'" (Pl.'s Br. at 11.) Specifically, Johnson states:

> The record clearly establishes that the Plaintiff has a psychogenic seizure
> disorder, which the ALJ acknowledged as a condition which affects her ability to
> perform work-related activities. The evidence establishes that she has grand mal
> seizure-like episodes, and that these episodes occur several times per week. And
> while the ALJ stated that the Plaintiff was not having seizures monthly, or weekly
> (Tr. 13), she did not refer to any record, either medical or non-medical, to support
> this assertion. To the contrary, the record clearly shows that the Plaintiff reported
> that she was having at least weekly seizure activity, of three seizures to as much as
> 17 seizures per week (Tr. 3959). The ALJ never challenged this claim, nor did the

11

ALJ refer to anything in the file which would refute the frequency of seizures reported by the Plaintiff. Indeed, the summary referred to above (Tr. 351-52) shows the frequency of seizures observed by others, including her doctors, which does not reflect the total number of seizure-like episodes which she experiences.

By failing to consider the effect of the Plaintiff's psychogenic seizures, the ALJ has not adequately evaluated the Plaintiff's ability to "manage psychologically based symptoms," as required in the category of "adapt or manage."

(Pl.'s Br. at 12.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. § 404.1520a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd*, 239 F.3d at 705. The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 404.1520a(c). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder,

12

the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

In this case, contrary to Jackson's claims, it is clear that the ALJ properly applied the special technique in analyzing Johnson's mental impairments as well as properly analyzed the effects of her psychogenic seizures on her ability to perform work. (Tr. 14-18.) In her decision, as set forth above, the ALJ found that Jackson had only moderate limitation in all functional areas. (Tr. 13-14.) In reaching her decision, the ALJ thoroughly examined the evidence in the record, including Johnson's statements, and provided the reasons for assigning each functional area each a respective weight. (*See* Tr. 12-14.) While the ALJ did not specifically refer to Johnson's psychogenic nonepileptic seizures in the adapting and managing oneself portion or any other functional area of her special technique analysis, the ALJ referenced Johnson's psychogenic seizures multiple times throughout her decision. (Tr. 12-18.) The ALJ also, in the special technique section analyzing Johnson's ability to adapt and manage herself, referenced that Johnson "was living with a wheelchair-bound person, and the claimant was able to assist with this person's care, housekeeping, and cooking (Exhibit 25F, p. 96)." (Tr. 17.) Additionally, the ALJ referenced Johnson's statements that her "difficulties with personal care" were a result of "physical and not mental issues." (Tr. 14.) Moreover, contrary to Johnson's claims, the ALJ did not state that Johnson did not have seizures occurring at least once a month; instead, the ALJ stated that Johnson

13

did not have seizures occurring at least once a month or occurring more frequently than once weekly "in spite of at least three months of prescribed treatment," which is one of the requirements to meet section 11.02 of the Listing (as discussed above). (Tr. 13.) Therefore, while the ALJ did not specifically mention the psychogenic nonepileptic seizures in her "special technique" analysis, it is clear that she was aware of the psychogenic seizures and took them into account in such analysis.

In addition, the ALJ clearly included limitations in the RFC determination to account for Johnson's psychogenic nonepileptic seizures as such determination included physical and mental limitations that would account for Johnson's seizures. The ALJ was clearly aware that Johnson had been diagnosed and suffered from psychogenic seizures and other mental disorders and referenced her treatment for such seizures throughout the record. (Tr. 12-18.) While Johnson may disagree with the ALJ's findings regarding her psychogenic nonepileptic seizures in the special technique and the RFC determination, such findings are supported by substantial evidence. Consequently, the ALJ did not err and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings,

conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 11, 2022**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED June 27, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE